UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAG AUTOMOTIVE LLC,

        Plaintiff,

v.

GADRA ENTERPRISES, INC.,

        Defendant.

_____/

Case No. 2:16-cv-12049

HON. STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [60, 101] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [41, 42]**

      The litigation involves a business dispute about the use of a parts numbering system. Plaintiff manufactures equipment used in the automobile industry, and Defendant competes with Plaintiff to supply replacement parts for Plaintiff's equipment. When it communicates with customers, Defendant uses Plaintiff's parts numbering system to identify replacement parts. Plaintiff sued because it believes that Defendant's practice violates the Lanham Act and state law. Defendant filed counterclaims and alleged that Plaintiff unlawfully disparaged Defendant's products. Now before the Court are cross-motions for summary judgment. The issues are fully briefed, and the Court held a hearing in June 2018. For the reasons below, the Court will grant summary judgment for Defendant on Plaintiff's claims and deny summary judgment on Defendant's counterclaims.

## BACKGROUND

      Plaintiff manufactures equipment used in the automobile industry. ECF 97, PgID 2132, ¶ 10. When necessary, Plaintiff also supplies replacement parts to service its

equipment. *Id.* at ¶ 11. But Plaintiff does not produce those replacement parts; it instead procures them through manufacturers such as A.Mannesman. *Id.* To help identify the replacement parts, Plaintiff uses a parts designation system (the "Numbering System"). *Id.* at ¶ 12. For example, Plaintiff may label one screw A.1004.1041 and another screw A.1077.9939. *Id.* Although Plaintiff claims that it has sole authority to approve use of the Numbering System, *id.* at ¶ 13, the mark is in fact unregistered.

Defendant competes with Plaintiff to supply replacement parts for Plaintiff's equipment. ECF 97, PgID 2133, ¶ 15. To facilitate sales, Defendant also uses the Numbering System. ECF 62, PgID 1343–44 (under seal). And like Plaintiff, Defendant procures the parts it sells from A.Mannesman. ECF 60-9, PgID 1326, ¶ 7 (under seal). A.Mannesman, however, manufactures Defendant's parts from different design schematics. *See* ECF 94 (under seal); ECF 41-8, PgID 831, 166:23–168:8.

Plaintiff believes the Numbering System is protectable as an unregistered trademark and that Defendant's use of the Numbering System unlawfully persuades customers that they are purchasing Plaintiff's parts. Ostensibly to redress that alleged misconception, Plaintiff told at least one customer that Defendant's products "are a lower quality ball screw not to [Plaintiff's] specification or design." ECF 67-4, PgID 1574 (under seal). Ultimately unable to resolve the dispute privately, Plaintiff has alleged here that Defendant's use of the Numbering System violates the Lanham Act and related state law. Believing that Plaintiff's comments to customers were false and hurting its sales, Defendant filed several counterclaims.

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

When considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff[,]" *Anderson*, 477 U.S. at 252.

## DISCUSSION

The case presents various distinct legal theories, so the Court will address each in turn. First, the Court will examine Plaintiff's Lanham Act claims and find that Defendant is entitled to summary judgment. Second, the Court will look at Plaintiff's related state law claims and adopt the same reasoning from the Lanham Act analysis. Third, the Court will examine and deny Plaintiff's request for declaratory judgment. And finally, the Court will review Defendant's counterclaims and deny summary judgment because there is a genuine issue of material fact.

## I.     Plaintiff's Lanham Act Claims

Plaintiff advances two independent theories under the Lanham Act: (1) false association, ECF 1, PgID 10–11, ¶ 54; and (2) false advertising, *id.* at 11, ¶ 55.[1] Defendant responds that Plaintiff lacks standing and that its theories fail on the merits.

### A. Standing

Defendant argues that Plaintiff lacks standing because it cannot show that it is the owner or licensee of the alleged unregistered trademark. In Lanham Act cases, standing usually means one of two things. The first is constitutional standing, which refers to the judiciary's limited power to resolve only cases or controversies. *Lexmark Int'l, Inc. v. Static Control Components*, *Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 1386 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The second is sometimes called prudential or statutory standing, but really refers to whether a party can bring a cause of action under a particular statute. *Id.* at 1387 & n.4. Plaintiff here satisfies both inquiries.

Starting with the constitutional question, Plaintiff must show: (1) that it has suffered an injury in fact that is concrete and particularized as well as actual or imminent; (2) that the injury is traceable to Defendant's conduct; and (3) that the injury is redressable. *Lujan*, 504 U.S. at 560–61 (citations omitted). At the summary judgment stage, Plaintiff cannot rely on allegations but must set forth specific facts by affidavit or other evidence; the Court will take those facts as true when resolving the motion. *Id.* at 561

---

[1] For clarity, the Court will adopt Justice Scalia's terminology. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1384 (2014) (referring to 15 U.S.C. § 1125(a)(1)(A) as a false association claim and 15 U.S.C. § 1125(a)(1)(B) as a false advertising claim).

Plaintiff made an adequate showing. It presented allegations based on evidence of lost sales and reputational harm, both of which constitute injuries in fact. *See Lexmark*, 134 S. Ct. at 1393–94. Those harms occurred because Defendant uses the Numbering System—allegedly violating Plaintiff's trademarks rights—and the harm is therefore traceable. *Id.* at 1386. And finally, the Court could award monetary damages to remedy the losses, so the harm is redressable. *Id.*

Plaintiff also has a cause of action under the Lanham Act. Starting with the statute, Congress provided that "any person who believes that he or she is likely to be damaged" by another's use of a mark may sue. 15 U.S.C. § 1125(a). Unlike other sections of the Lanham Act, § 1125(a) does not require a plaintiff to have an ownership interest. *Compare* 15 U.S.C. § 1114(1) (creating a cause of action for "the registrant") *with* 15 U.S.C. § 1125(a) (providing a cause of action for "any person"); *see also Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867, 2016 WL 266396, at *5 (E.D. Mich. Jan. 21, 2016) (collecting cases).

Although a plaintiff need not have an ownership interest, there are still limits on who can bring a cause of action. The Supreme Court has interpreted § 1125(a) to require a plaintiff's alleged harm (1) to fall within the zone of interests protected by the Lanham Act, and (2) to be proximately caused by the alleged statutory violations. *Lexmark*, 572 U.S. at 1388–91. Plaintiff alleges harm to a commercial interest in reputation and sales, so the first prong is satisfied. *Id.* at 1390. And since those harms are allegedly caused by Defendant's improper use of Plaintiff's unregistered trademark, the second prong is satisfied as well. *Id.* Plaintiff has a cause of action.

B. False Association Claim

Turning to the merits, Plaintiff alleges that the Numbering System is an unregistered trademark and therefore Defendant's use of the Numbering System constitutes false association in violation of 15 U.S.C. § 1125(a)(1)(A). For the reasons below, the Court finds that Defendant is entitled to summary judgment on that theory. Because the Court is considering Defendant's motion when drawing that conclusion, the Court makes all reasonable inferences in Plaintiff's favor.

To prevail, Plaintiff must prove that Defendant's use of the Numbering System constitutes: (1) the use of a designation;[2] (2) in interstate commerce; (3) in connection with goods; (4) that is likely to cause confusion, mistake, or deception about the origin, sponsorship, or approval of Defendant's goods. *See* 15 U.S.C. § 1125(a)(1)(A); 5 McCarthy on Trademarks and Unfair Competition § 27:13 (5th ed. 2018). Plaintiff cannot establish the first element, and Defendant is entitled to summary judgment.

The first element is satisfied if a plaintiff has a qualifying unregistered trademark. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that [15 U.S.C. § 1125(a)] protects qualifying unregistered trademarks[.]") (citations omitted). To determine whether an unregistered trademark is protected under 15 U.S.C. § 1125(a), courts examine whether the mark would qualify for registration. *Id.* And to qualify for registration, a mark must be able to identify the plaintiff's goods. *Id.* To determine whether a mark can distinguish goods, courts typically start by deciding whether the mark is: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5)

---

[2] Designation is shorthand for the statutory phrase "any word, term, name, symbol, or device, or any combination thereof." 15 U.S.C. § 1125(a)(1).

fanciful. *Id.* The categorization then dictates what additional analysis, if any, is required. *Id.* A generic mark cannot qualify for registration, descriptive marks can qualify for registration in some circumstances, and suggestive, arbitrary, and fanciful marks are inherently distinctive and entitled to protection. *Id.* at 768–69. Although categorizing a mark raises questions of fact, appropriately resolving those factual disputes at the summary judgment stage amounts to a legal conclusion. *See DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 511 (6th Cir. 2004).

The Numbering System is descriptive. The Numbering System is an alphanumeric combination that identifies a part model or type. For example, a label at issue is "A.1088.5000" which refers to a specific "W Axis Ball Screw." ECF 62, PgID 1344 (under seal). The Numbering System is therefore a style and grade designation. *See* 2 McCarthy on Trademarks and Unfair Competition §§ 11:36, 11:37 (5th ed. 2018). Style and grade designations are descriptive.[3] *See id.* at § 11:37; *Tenneco Auto. Operating Co. Inc. v. Kingdom Auto Parts*, No. 08-CV-10467, 2009 WL 1438834, at *6 (E.D. Mich. May 18, 2009), aff'd, 410 F. App'x 841 (6th Cir. 2010) (court did not reject the parties' admission that a numbering system is descriptive); *R&B, Inc. v. Needa Parts Mfg.*, 418 F. Supp. 2d 684, 699 (E.D. Pa. 2005). The Numbering System therefore must have acquired a

---

[3] At the motion hearing, Plaintiff cited *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975 (D. Minn. 1986) for the proposition that non-functional numbering systems are inherently distinctive and thus do not require a secondary meaning to be registerable. Plaintiff's argument and citation is unfounded. Similar to the arguments made here, the plaintiff in *B & H Supply* claimed that the numbering system related to the identification of the part's source rather than its usefulness. *Id.* at 995. But rather than holding that the numbering system was inherently distinctive, *B & H Supply* held that the numberings were "entitled to protection if they have acquired secondary meaning." *Id.* (citations omitted). There, however, the parties stipulated that the numbering system had acquired a secondary meaning. *Id.* And that is not the case here.

secondary meaning to be registerable. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (quoting *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 319 (6th Cir. 2001)).

The Numbering system has not acquired a secondary meaning. "A descriptive mark achieves secondary meaning when 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product.'" *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). The question here then is whether the public perceives the primary significance of the Numbering System to be that Plaintiff is the source of the replacement part, and Plaintiff bears the burden to make that showing at trial. *See Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 741 (6th Cir. 2018). When answering the question, the relevant factors are: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amounts of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *Herman Miller*, 270 F.3d at 311–12. And when weighing the factors, no single factor is determinative and a plaintiff need not prove every factor. *Id.* at 312. The Court will address each factor in turn.

*Direct consumer testimony.* The factor does not support finding that the Numbering System has acquired a secondary meaning. Plaintiff need not provide explicit testimony; circumstantial testimony suggesting that the consuming public links the Numbering System with Plaintiff is sufficient. *Id.* Here, Plaintiff largely relies on Defendant's sales tactics to show consumer association. ECF 42, PgID 1032–33 (under seal). Specifically,

Plaintiff points to Defendant's website and customer quotes. Those citations, however, mainly show that referencing the Numbering System cannot identify the source of the part.

For example, Defendant's quotes contain two columns. The first identifies the "product name," and the second identifies the "product description." ECF 53, PgID 1147 (under seal). A typical product name is "Ball Screw by A. Mannesmann" with a product description of "MAG part # A.1004.1041." *Id.* Similarly, Defendant's website separately lists the "part number" and the "manufacturer." ECF 41-12, PgID 883. If consumers readily identified the Numbering System with Plaintiff's parts, it seems a separate category to identify the manufacturer would be unnecessary.

On the other hand, the evidence suggests that customers returned Defendant's parts to Plaintiff for warranty. ECF 45, PgID 1085 (under seal); ECF 44, PgID 1061–62, 1071 (under seal). It is unclear, however, if customers made that mistake because Defendant labeled the part using the Numbering System or because the customer used the part in Plaintiff's machine. ECF 45, PgID 1085 (under seal). But even inferring in Plaintiff's favor that the source of the mistake was the labeling, the number of warranty requests was rather small. ECF 44, PgID 1061 (under seal) (no more than five requests made). If consumers associated the Numbering System with Plaintiff, then one would expect more confusion.

*Consumer surveys.* The factor does not support finding that the Numbering System has acquired a secondary meaning. At the motion hearing, Plaintiff correctly admitted that there are no consumer surveys showing secondary meaning. Although the lack of

consumer survey evidence is not fatal, "survey evidence is the most direct and persuasive evidence" of secondary meaning. *Herman Miller*, 270 F.3d at 312–13.

*Exclusivity, length, and manner of use.* The factor supports finding that the Numbering System has acquired a secondary meaning. At the motion hearing, Plaintiff claimed to have used the Numbering System continuously and exclusively since 2005. Defendant argued that Plaintiff did not exist in its current form until 2014 and that Defendant and a former third party used the Numbering System as early as 1998. Defendant's argument is well taken, especially because it is unclear how the Numbering System originated, when intellectual property rights may have transferred, and which companies have been or currently are authorized to use the system. Although the lack of clarity may severely limit Plaintiff's ability to prevail at trial, at the summary judgment stage the Court will nevertheless make reasonable inferences in Plaintiff's favor. Making those inferences, the Court finds that more than one decade of continuous and exclusive use suggests that the Numbering System has acquired a secondary meaning.

*Amount and manner of advertising.* The factor does not support finding that the Numbering System has acquired a secondary meaning. Plaintiff admits that it has no specific budget for advertising the Numbering System. ECF 42, PgID 1034 (under seal). Instead, Plaintiff relies on its general advertising through its website, brochures, and spare parts list. ECF 69, PgID 1708. General advertising, however, does not suffice; Plaintiff must provide evidence of extensive advertising resulting in consumer association. *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989); *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg.*, 573 F. App'x 547, 557 (6th Cir. 2014).

*Amount of sales and number of customers.* The factor does not support finding that the Numbering System has acquired a secondary meaning. The evidence shows that for a nearly three-year period Plaintiff sold over 300 replacement parts generating about $852,588.00 in revenue. ECF 97, PgID 2134, ¶ 17. That said, there is no evidence linking those sales to the Numbering System. And even if a link did exist, the revenue is insufficient to show secondary meaning. *See Burke-Parsons-Bowlby,* 871 F.2d at 596 ($2,000,000 in gross sales did not support finding secondary meaning)*; Papa Ads, LLC v. GateHouse Media, Inc.*, No. 5:10 CV 203, 2011 WL 13186119, at *8 (N.D. Ohio Mar. 22, 2011), aff'd, 485 F. App'x 53 (6th Cir. 2012) ($815,000 in revenue did not support finding secondary meaning).

*Established place in the market.* The factor does not support finding that the Numbering System has acquired a secondary meaning. Plaintiff provides no evidence of its market share in the replacement parts market. It instead relies on Defendant's alleged copying of the Numbering System. ECF 42, PgID 1034 (under seal); ECF 69, PgID 1708. That argument, however, is better raised in the context of the next factor.

*Proof of intentional copying.* The factor supports finding that the Numbering System has acquired a secondary meaning. Defendant intentionally uses the Numbering System, and Plaintiff argues that alone is enough to establish secondary meaning. ECF 42, PgID 1035 (under seal). Some case law loosely supports that proposition. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002) ("This court has long held that evidence of intentional copying shows the strong secondary meaning of [a product] because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.")

(quotations omitted); *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 779 F. Supp. 2d 671, 678 (E.D. Mich. 2011) (holding that evidence of intentional copying was "so clear" that plaintiff's mark "should be afforded secondary meaning.").

But Plaintiff's proposition ultimately extends too far. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 419 (6th Cir. 2006) ("Intentional copying may be used to show secondary meaning . . . but it is only one of many considerations in [the seven-part test] and does not alone establish secondary meaning."); *Herman Miller*, 270 F.3d at 312 ("No single factor is determinative[.]"). At most, intentionally copying can lead to a presumption of secondary meaning. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) ("Arguably, secondary meaning in this case can be presumed from [defendant's] admission that he intentionally copied [plaintiff's] designs."); *Libbey Glass, Inc. v. Oneida Ltd.*, 61 F. Supp. 2d 700, 708 (N.D. Ohio 1999) ("In the Sixth Circuit, intentional copying only raises a presumption of secondary meaning."). And that presumption is rebuttable if there is a "logical reason" for the copying. *Libbey Glass*, 61 F. Supp. 2d at 708 (citing *Ferrari*, 944 F.2d at 1239).

Here, there is a logical reason for the copying. Customers use the Numbering System to procure replacement parts because it ensures the replacement part will fit and function properly. The market therefore requires Defendant to use the Numbering System—not to identify Plaintiff as the source of the parts, but to help customers identify the parts they are purchasing. Although Defendant's copying suggests the Numbering System has acquired a secondary meaning, the logical reason for the copying weakens the showing.

In sum, a majority of the factors do not suggest that the Numbering System has acquired a secondary meaning. And the remaining factors are insufficiently persuasive. Although that conclusion does not necessarily mean Defendant's actions are proper, it does mean that Plaintiff did not collect enough during discovery to show secondary meaning. Thus, Defendant is entitled to summary judgment on the false association theory.

## C. False Advertising

Plaintiff also advances a false advertising theory under 15 U.S.C. § 1125(a)(1)(B). ECF 1, PgID 11, ¶¶ 55, 60. Plaintiff's claims are based on portions of Defendant's website, purchase orders, and quotes that use the Numbering System. ECF 69, PgID 1687–90. Defendant argues that Plaintiff cannot prevail because (1) the Numbering System is not a registerable trademark; and (2) Plaintiff cannot show that Defendant's practices are deceiving. ECF 60, PgID 1246–47 (under seal). For the reasons below, the Court finds that Defendant is entitled to summary judgment. Because the Court is considering Defendant's motion when drawing that conclusion, the Court will make all reasonable inferences in Plaintiff's favor.

Defendant is correct that the Numbering System is not registerable, *see supra* I.B, but that does not foreclose Plaintiff from prevailing on its false advertising theory. Instead, to prevail Plaintiff would have to show that Defendant: (1) made false or misleading statements of fact about the replacement parts, (2) which actually deceived or had a tendency to deceive a substantial portion of the intended audience, and (3) likely

influenced the deceived consumers' purchasing decisions.[4][5]  *Wysong Corp. v. APN, Inc.,* 889 F.3d 267, 270 (6th Cir. 2018) (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). Defendant does not clearly identify which elements it thinks Plaintiff cannot show, but Defendant's arguments seem most targeted at the first two elements. The Court will address each in turn.

### 1. Element One: False or Misleading Statements

As to the first element, Defendant contends that Plaintiff "cannot identify a false or misleading statement." ECF 60, PgID 1246 (under seal). Defendant's argument is well taken, but it ultimately does not warrant summary judgment. Two types of communications are particularly relevant here: Defendant's specific communications during a transaction, and Defendant's general communications on its website.

In terms of specific communications during a transaction, a sale begins when Defendant sends a customer a quote. If the customer decides to make a purchase, it sends Defendant a purchase order. Upon receipt of the purchase order, Defendant sends an order to a third-party supplier. The supplier then sends the replacement part to Defendant. To complete the sale, Defendant puts its label on the shipment, removes the supplier's label, and sends the part to the customer.

---

[4] A Lanham Act claimant must also show a link to interstate commerce and a causal link between the false advertising and his own injury. 15 U.S.C. § 1125(a). Neither element is at issue here.

[5] If a communication is "literally false," then courts presume that consumers were actually deceived. *Wysong,* 889 F.3d at 271. But only an unambiguously deceptive message can be literally false. *Id.* (citing *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 737 (6th Cir. 2012)). Plaintiff does not seem to advance a "literally false" theory. But regardless, Defendant's statements here were not unambiguously deceptive and the Court will not make any presumptions.

Plaintiff challenges several exchanges that occur throughout this process. First is the quote, which looks like this:

ECF 53, PgID 1147 (under seal). Plaintiff argues that the use of "MAG" misleads potential customers; Defendant disagrees. Neither party is clearly correct. In Defendant's favor, the quote states that A.Mannesmann, rather than Plaintiff, makes the part. But to Plaintiff's credit, Plaintiff also sources its parts from A.Mannesmann and the product description references "MAG."

Next is a purchase order, which looks like this:

**Global Parts & Maintenance (U972A)**
6112 Executive Drive
Westland, MI 48185

Page 1

| Phone No. | (734)326-7600 |
| Fax No. | (734)326-5152 |

**Purchase Order Number: A196490**
Purchase Order Date:      11/04/15

Vendor Quote No.

**To:** Gadra Technology Corp.
345 Airport Road
Niagara-on-the-Lake, ON  L0S 1J0
Mark Langkos

**Ship To:**   Ford Motor Romeo Engine Plant
701 E. 32 Mile Road
Dock # 12
Romeo, MI  48065
**Attention:**
Ford PO #  B71 RL15296187

| Ship Via | FedEx Ground:Bill to Recipient |
| | Account#459360581 **SMALL PARCEL ONLY** |
| Due Date | Prompt Shipment Requested |
| Terms | 30 Days |
| Contact | Mark Langkos |
| Fax No. | 905-688-6414 |

In order to ensure proper payment all shipping
documents must include the Ford PO #, Part
Number, and GP&M Vendor Code  "U972A".

**Send Invoices to invoice@gpandm.com**

| Part No. | Description | Unit | Qty | Unit Price | Total Price |
|---|---|---|---|---|---|
| 48537216 | BALLSCREW MAG AUTOMOTIVE  A.1004.1042 | EA | 1 | 4,698.00 | 4,698.00 |

ECF 53, PgID 1177 (under seal). Plaintiff argues that the purchase order is misleading because it uses "MAG AUTOMOTIVE" to describe the ordered part. That is unpersuasive, however, because the customer—not Defendant—sends the purchase order. So, any statements in the purchase order cannot be attributed to Defendant.

Plaintiff next highlights Defendant's exchanges with Defendant's supplier. But customers are not privy to those exchanges, so they cannot mislead the customers.

Finally, Defendant delivers the replacement parts to the customer. When doing so, Defendant replaces the supplier's label with Defendant's label and ships the package. When the client receives the package, the outside label looks like this:



ECF 41-11, PgID 869. Like Defendant's quotes, the label describes the part as a Mannesmann ball screw. And the label does not reference "MAG" at all. So, nothing about the outside label is misleading. The same is true for the interior label, which looks like this:



ECF 41-16, PgID 966. Consistent with the exterior label, the interior label states that it is an A.Mannesmann part and does not reference Plaintiff.

The Court next addresses Defendant's general communications on its website. Plaintiff challenges a page that lists Defendant's various parts for sale. The page looks like this:



ECF 41-12, PgID 888. Plaintiff argues that by listing "MAG-Hille Huelle" as the manufacturer, Defendant is misleading customers. ECF 69, PgID 1687. Defendant responds by pointing to a different portion of the website that looks like this:



ECF 41-12, PgID 943. According to Defendant, the second page shows that A.Mannesman produces the replacement part and that "MAG – Hueller Hille"

manufactured the machine that the replacement part fits in. To bolster its argument, Defendant contends that the sophisticated audience here, customers such as Ford and General Motors, would know those facts.

In sum, some of Defendant's communications could suggest that Plaintiff makes the replacement parts at issue and other of Defendant's communications are not misleading at all. Given the summary judgment standard, the Court cannot properly decide the factual question of how customers resolve the conflict between Defendant's communications. Neither side is entitled to summary judgment on the first element.

### 2. Element Two: Tendency to Deceive

To satisfy the second element, Plaintiff must show that Defendant's communications actually deceived or had a tendency to deceive a substantial portion of the intended audience. *Wysong*, 889 F.3d at 270–71. Although plaintiffs typically rely on consumer surveys to show that a statement is misleading, *id.* at 271, Plaintiff did not do that here. Instead, Plaintiff largely relies on an incident where Ford requested warranty work from Plaintiff for replacement parts that Defendant allegedly supplied. ECF 44, PgID 1059 (under seal). Ford's mistaken warranty request suggests some confusion. Moreover, a Ford facility cancelled all of its orders from Defendant once it realized that the replacement parts were from Defendant rather than Plaintiff. ECF 49, PgID 1118 (under seal). Making inferences in Plaintiff's favor, the decision suggests that the Ford facility originally thought it was buying Plaintiff's parts. To make things worse, Defendant twice referred to its parts as "original parts" to ameliorate the Ford facility's concerns *Id.* at 1116–17.

Although that episode troubles the Court, Plaintiff has not provided sufficient evidence to survive summary judgment. First, the mistaken warranty requests occurred no more than five times. ECF 44, PgID 1061 (under seal). Given the volume of sales and the sophistication of the customers here, confusion by a single customer on a handful of occasions does not constitute a substantial portion of the intended audience. Second, the confusion was accredited to the labeling etched on the replacement part or that the part was in Plaintiff's machine—not Defendant's communications. *Id.* at 1071; ECF 45, PgID 1085 (under seal). And the Court already found that the Numbering System is not a registerable trademark. Third, communications from Ford show that although there was confusion about the quality of Defendant's replacement parts, Ford knew Defendant was selling "Mannesman screws" and that there was a difference between buying parts from Plaintiff and Defendant. *See* ECF 55, PgID 1184 (under seal); ECF 56, PgID 1186 (under seal). Without additional evidence, Plaintiff cannot show that Defendant's misleading communications tended to deceive a substantial portion of the intended audience. Plaintiff therefore cannot make a prima facie showing of false advertising, and Defendant is entitled to judgment as a matter of law.

II.    Plaintiff's State Law Claims

Plaintiff brings claims under Michigan law that are similar to the Lanham Act claims. ECF 1, PgID 12. Neither side seriously addressed the state law claims in the briefs or during the hearing. Defendant did, however, mention that if the Lanham Act claims fail, then the state law claims must fail as well. ECF 60, PgID 1247 (under seal). And that proposition is correct. *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 845 (6th Cir. 2010) ("The elements of all these claims are the same, as is the

analysis—failure under one is failure under all."). Because Plaintiff's federal claims fail, the Court will also grant summary judgment for Defendant on the state law claims.

III.     Plaintiff's Request for Declaratory Judgment

Plaintiff requests a declaration that Defendant's use of the Numbering System violates Plaintiff's rights in its trademarks. Because Plaintiff has not shown that it has trademark rights in the Numbering System, *see supra* Section I.B, the Court will deny the request.

IV.     Defendant's Counterclaims

In its answer, Defendant filed three counterclaims: (1) false advertising in violation of 15 U.S.C. § 1125(a); (2) business and product disparagement; and (3) tortious interference with business relationships. ECF 9, PgID 101–04. In those claims, Defendant alleged that Plaintiff told customers that Defendant's replacement parts were different than and inferior to Plaintiff's parts. Only Plaintiff has moved for summary judgment on the counterclaims. The Court finds that summary judgment is improper because there is a genuine issue of material fact.

In its opening brief, Plaintiff summarily states that Defendant "has not offered any evidence to support the alleged statements that form the basis of its counterclaim." ECF 41, PgID 729 (emphasis omitted). That claim is incorrect; there are at least two emails that support Defendant's counterclaims. In September 2014, Plaintiff's operations manager emailed Ford stating that Defendant's products "are a lower quality ball screw not to [Plaintiff's] specification or design." ECF 67-4, PgID 1574 (under seal). And then in December 2014, Ford told the replacement parts manufacturer that Plaintiff claimed that

its parts are "not technically identical" to Defendant's parts. ECF 67-7, PgID 1616 (under seal).

Once Defendant pointed to those parts of the record, Plaintiff instead argued that there can be no liability because the challenged statements are true.[6] Even if so, there is not clear evidence that Defendant's parts are inferior.[7] *See* ECF 55, PgID 1184 (stating that initial studies suggest Defendant's parts have a "slightly reduced service life") (under seal); ECF 67-5, PgID 1579, 1587–90 (suggesting that Defendant's parts are of equivalent quality). Because the evidence conflicts, there is a genuine issue of material fact. Thus, summary judgment on the counterclaims is inappropriate.

V.  Case Management

In sum, Defendant is entitled to summary judgment for all of Plaintiff's claims and summary judgment is inappropriate for Defendant's counterclaims. Now that the issues have been narrowed, the Court finds that facilitation would advance the interests of finality, efficiency, and judicial economy. The Court will therefore refer the case to experienced federal facilitator Dennis Barnes. If the case is not resolved at facilitation, it will promptly proceed to trial on the counterclaims.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [60, 101] is **GRANTED**.

---

[6] Plaintiff also attacked the admissibility of a related declaration. ECF 80, PgID 1993–94. But because the emails are sufficient to resolve the issue, the Court need not address the argument.

[7] Plaintiff's statement is perhaps puffery. *See Wysong,* 889 F.3d at 271. But Plaintiff did not make that argument in its briefs or at the hearing, and the Court will not raise the issue sua sponte.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [41, 42] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Dennis Barnes for facilitative mediation to occur no later than **September 21, 2018** or as otherwise set by Mr. Barnes. The facilitation shall proceed in compliance with Local Rules 16.3 and 16.4.

**IT IS FURTHER ORDERED** that, no later than **August 17, 2018**, the parties shall contact Mr. Barnes[8] and **JOINTLY FILE** a notice of facilitation that indicates the date and location of facilitation as well as any other relevant information.

**IT IS FURTHER ORDERED** that the final pretrial conference is set for **October 30, 2018** at 10am. Trial will start **November 13, 2018** at 9am. Given the age of the case, the Court is unlikely to grant any extensions. Due to building renovations, the Court will set the location for the final pretrial conference and trial on a later date.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 7, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 7, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager

---

[8] The parties can contact Mr. Barnes at 313-596-9329 or dbarnes@bsdd.com